## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

ASBERRY GLOVER, ET AL.                          CIVIL ACTION

versus
                                                22-445-SDD-SDJ
ARGONAUT INSURANCE COMPANY,
ET AL.

### RULING

This matter comes before the Court on the Motion for Summary Judgment[1] filed by Aman Truck, LLC ("Aman Truck"), Argonaut Midwest Insurance Company, JHB Trucking, Inc. ("JHB Trucking"), and Kirpal Singh, (collectively, the "Defendants"). Plaintiffs Asberry Glover, Louisa Glover, and Darrick Glover, (collectively, the "Plaintiffs") filed an Opposition,[2] to which Defendants filed a Reply.[3] For the following reasons, the motion is denied.

## I.    BACKGROUND AND PROCEDURAL FACTS

Plaintiffs were driving westbound down Interstate-10 ("I-10") on July 29, 2021.[4] Asberry Glover ("Mr. Glover") was driving the vehicle, while his wife, Louisa Glover ("Mrs. Glover"), and their son, Darrick Glover ("Darrick"), were passengers.[5] They were driving in the express lane. Plaintiffs allege that as the express lane was ending, Mr. Glover merged to the center lane in which traffic congestion began developing from road work nearby.[6] He then slowly tried to merge to the right lane.[7] Mr. Glover alleges that he could

---

[1] Rec. Doc. 41.
[2] Rec. Doc. 42.
[3] Rec. Doc. 43.
[4] Rec. Doc. 13.
[5] Rec. Doc. 42-2, p. 11, Dep. Transcript, p. 36:17–22.
[6] *Id* at p. 12.
[7] *Id*.

tell the vehicle was "missing gas"; nevertheless, he continued moving with the traffic to merge to the right lane.[8] He activated his emergency flashers and attempted to move farther right and off the road.[9] As he moved, a 2021 freightliner truck rear-ended the Glovers' vehicle.[10] Kirpal Singh ("Singh") operated the truck.[11] Consequently, the Glovers' vehicle was totaled and the Plaintiffs sustained significant injuries.[12] Plaintiffs allege that Mr. Glover suffered a traumatic brain injury and is now paraplegic.[13] Plaintiffs sued Defendants alleging Singh was negligent. Plaintiffs allege Singh drove down the highway at 70 miles per hour with no regard for the slowing of traffic ahead.[14] Plaintiffs sued JHB Trucking and Aman Truck alleging negligence, including the negligent hiring of and failure to train Singh.[15] On February 15, 2024, Plaintiffs moved for leave to add a new defendant, Coyote Logistics, LLC. The Court granted this motion on July 26, 2024.[16]

According to Defendants, Singh was driving westbound I-10 when he suddenly saw the Glovers' vehicle parked in the center lane of the roadway.[17] Movants argue that there was no traffic congestion and nothing was obstructing Mr. Glover from moving the vehicle to the left lane of I-10.[18] Defendants contend the accident was caused by Mr. Glover creating a hazard that Singh could not reasonably avoid.[19] Defendants move for

---

[8] *Id.*
[9] *Id* at p. 13.
[10] Rec. Doc. 13.
[11] Rec. Doc. 41-6, p. 8.
[12] Rec. Doc. 42, p. 2 (citing Rec. Doc. 42-3)).
[13] *Id.*
[14] *Id.*
[15] Rec. Doc. 13, p. 4. Plaintiffs allege Aman Truck and JHB Trucking constitute a single business enterprise thereby making both companies liable. Rec. Doc. 13, p. 6.
[16] Rec. Doc. 50.
[17] Rec. Doc. 41-2, p. 2 (citing 41-4, p. 20)).
[18] *Id* at p. 3.
[19] *Id* at p. 15.

summary judgment arguing there is no factual dispute that the Glovers bear the sole fault for the accident.[20]

## II.    LAW AND ANALYSIS

### A.  Summary Judgment Standard

Summary Judgment should granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[21] The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[22] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[23] If the moving party "fails to meet this initial burden, the summary judgment must be denied, regardless of the nonmovant's response."[24]

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubts as to the facts, or a scintilla

---

[20] Rec. Doc. 41.
[21] *Basil v. Dow Chem. Co.*, 2020 WL 1964155, at *1 (M.D. La. Apr. 23, 2020).
[22] *Id*.
[23] *Id*.
[24] *Id*.

of evidence. Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[25] The Court will not, "in the absence of any proof assume that the nonmoving party could or would prove the necessary facts."[26] Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial.

### B. Evidentiary Objections

Defendants offer the Crash Report completed by Trooper Adam Wentzel ("Trooper Wentzel") and a report by expert accident reconstructionist, Dean Nance ("Nance"). Plaintiffs object to the Court's consideration of the Crash Report, Singh's written statement within the Crash Report, and Nance's Expert Report. Plaintiffs argue that each should be stricken from the record because (1) the Crash Report constitutes inadmissible hearsay; (2) Singh's written statement is not competent summary judgment evidence; and (3) Nance's Expert Report is based on unsubstantiated evidence.[27]

At the summary judgment stage, whether materials are admissible in their current form is not dispositive because "materials cited to support or dispute a fact need only be *capable* of being 'presented in a form that would be admissible in evidence.'"[28] Statements that would technically constitute hearsay at the summary judgment stage can oftentimes be reduced to admissible form later by having the declarant testify to the matter

---

[25] *Id* at *2.
[26] *Id*.
[27] Rec. Doc. 42, pp. 10–22.
[28] *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)(2)).

at trial.[29] For this reason, several district courts find that "[w]hether the statements as made by the declarant are hearsay is not relevant in the summary judgment context."[30]

### Rec. Doc. 41-6: The Crash Report

Plaintiffs object to the admission of the Crash Report because Trooper Wentzel does not recall speaking with Mr. Glover post-accident.[31] Mr. Glover also does not recall speaking to Trooper Wentzel.[32] In Reply, Defendants concede that Trooper Wentzel has "very little" independent recollection of the crash, but notwithstanding that, he reviewed his body camera footage and police report to refresh his recollection of the accident.[33] Plaintiffs also object to the Crash Report because Trooper Wentzel was not a crash reconstructionist at the time of the accident, so he "did not perform any sort of crash reconstruction or investigation pursuant to crash reconstruction standards."[34] Trooper Wentzel completed his training to become a crash reconstructionist in June 2023, two years after the subject accident.[35] There is no dispute that Mr. Glover and Trooper Wentzel lack memory of their conversation post-accident. Additionally, there is no dispute that at the time of the accident—which occurred in 2021—Trooper Wentzel was not a crash reconstructionist. Nevertheless, the hearsay objection as to the Crash Report is overruled. There is no dispute that Trooper Wentzel was the investigating officer of the accident and completed the Crash Report.[36] Trooper Wentzel provided deposition

---

[29] *See, e.g., Guillory v. Carrington Mortg. Servs., LLC,* 2024 WL 1020555, at *6 (M.D. La. Mar. 8, 2024).
[30] *Barnett v. Louisiana Dep't of Health*, 2023 WL 2467876, at *2 (M.D. La. Mar. 10, 2023) (quoting *Texas Ent. Ass'n, Inc. v. Hegar*, 2019 WL 13036162, at *15 n.12 (W.D. Tex. Feb. 27, 2019), *aff'd*, 10 F.4th 495 (5th Cir. 2021)).
[31] Rec. Doc. 42, p. 11.
[32] *Id* at pp. 10–11.
[33] Rec. Doc. 43, p. 3; Rec. Doc. 41-4, p. 15, Dep. Transcript, p. 14:1–3.
[34] Rec. Doc. 42, p. 12.
[35] Rec. Doc. 41-4, p. 11, Dep. Transcript, p. 10:11–15.
[36] Rec. Doc. 41-6.

testimony and can be available for trial. Accordingly, Plaintiffs fail to show that the Crash Report is incapable of being reduced to admissible form at trial.

### Rec. Doc. 41-6, p. 8: Singh's Written Statement in the Crash Report

Plaintiffs object to the admission of Singh's written statement because there is no evidence showing that Singh wrote the signed statement or that he can speak or write in English.[37] Citing Nance's testimony, Plaintiffs assert that "an unidentified person" is depicted in the body camera footage holding Singh's written statement.[38] During his deposition, Nance viewed this footage. Nance testified that the footage depicts someone other than Singh "writing down something on a piece of paper" then giving the piece of paper to Singh.[39] When questioned whether it was "more probable than not [that] this statement was likely filled out by someone other than Kirpal Singh,"[40] Nance testified, "[i]t could be."[41] Nance also testified that he did not know whether Singh could speak or understand English.[42] Defendants counter that Plaintiffs' argument is "pure speculation."[43] The Court agrees with Defendants. The statement at issue is hand written, dated, and signed with Singh's signature.[44] Further, notwithstanding evidence of Singh's English fluency or lack thereof, Plaintiffs fail to show that the written statement is incapable of being reduced to an admissible form at trial. The objection is overruled. It is worth noting, though, that Singh has failed to appear for his deposition on numerous occasions; thus, Plaintiffs have not had an opportunity to question Singh about his statement.[45]

---

[37] Rec. Doc. 42, p. 10.
[38] *Id*.
[39] Rec. Doc. 42-7, p. 17, Dep. Transcript, p. 64:17–24.
[40] Rec. Doc. 42-7, p. 18, Dep. Transcript, pp. 66:24–67:1.
[41] Rec. Doc. 42-7, p. 18, Dep. Transcript, p. 67:3.
[42] Rec. Doc. 42-7, p. 15, Dep. Transcript, p. 54:1–9.
[43] Rec. Doc. 43, p. 3.
[44] Rec. Doc. 41-6, p. 8.
[45] Rec. Doc. 42, p. 10.

Defendants state that Singh has not appeared because Plaintiffs failed to serve him.[46] But, Plaintiffs noticed Singh's video deposition and served all counsel on September 20, 2023, and again on November 29, 2023 via electronic mail.[47] This method sufficiently noticed Singh of his deposition. Accordingly, while the Court considers this statement for the purposes of summary judgment, the inability for Plaintiffs to question Singh raises concerns on whether summary judgment should be granted.

### Rec. Doc. 41-9: Dean Nance's Expert Report

Plaintiffs argue that Nance's Expert Report is inadmissible because Nance relies on unverified evidence.[48] Nance routinely uses a crash data retrieval system to recover information from a vehicle.[49] But he was unable to recover, or rather download, any information from the Glovers' vehicle.[50] He testified that this usually occurs when there has been a power loss in the vehicle, but he does not know what could have caused the power loss.[51] Despite this uncertainty, Nance surmised that the power loss happened prior to the crash.[52] Plaintiffs contend this testimony supports the "erroneous assumption" that the vehicle was completely stopped in the roadway before the accident.[53] They argue Nance's Report "wholly accept[s]" Singh's statement but rejects the testimony of Mr. and Mrs. Glover.[54] The Court disagrees. First, Nance considered the Glovers' testimony that the vehicle was still moving at the time of the accident.[55] Second, even accepting

---

[46] Rec. Doc. 43, p. 2, Footnote 1.
[47] Rec. Doc. 42-5.
[48] Rec. Doc. 42, p. 13.
[49] Rec. Doc. 42-7, p. 7, Dep. Transcript, p. 24:7–10.
[50] Rec. Doc. 42-7, p. 7, Dep. Transcript, p. 24:7–12.
[51] Rec. Doc. 42-7, p. 7, Dep. Transcript, p. 23:2–13.
[52] Rec. Doc. 42-7, p. 7, Dep. Transcript, p. 41:9–15.
[53] Rec. Doc. 42, p. 15.
[54] *Id* at p. 14.
[55] Rec. Doc. 42-7, p. 6, Dep. Transcript, p. 20:1–4.

Plaintiffs' argument, Plaintiffs nonetheless fail to show that Nance's Expert Report is incapable of being reduced to admissible form at trial. Nance provided deposition testimony and can be cross-examined on the information he relied on to complete his Report. Plaintiffs additionally argue that Nance's Expert Report is inadmissible because he improperly relied on Singh's written statement and made contradictory, self-serving statements in his deposition.[56] But again, neither of these arguments stand for the proposition that the Report is inadmissible for the purposes of summary judgment. Contrary to Plaintiffs' arguments, the Court's consideration of the Report does not render Nance accepted as an expert at trial, nor does it mean that the Court will weigh the credibility of the Report. The Report is used in conjunction with the rest of the summary judgment evidence only to decide if there is a genuine dispute of any material fact. The objection is overruled.

### C. Negligence

La. R.S. 32:81(A) provides that "the driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway." The "law has established a rebuttable presumption that a following motorist who strikes a preceding motorist from the rear has breached the standard of conduct prescribed by LSA–R.S. 32:81A and is therefore liable for the accident."[57] However, "[a] following motorist. . .may rebut the presumption of negligence by proving that he had his vehicle under control, closely observed the preceding vehicle, and followed at a safe distance

---

[56] Rec. Doc. 42, pp. 17–21. There are no pending motions in limine challenging Nance's expertise or his proposed opinions.
[57] *Harbin v. Ward,* 2013–1620 (La. App. 1 Cir. 5/29/24), 147 So.3d 213, at 218.

under the circumstances. The following motorist may also avoid liability by proving that the driver of the lead vehicle created a hazard that he could not reasonably avoid (a sudden emergency)."[58]

Further, "[t]he presumption does not in and of itself preclude an apportionment of fault to the lead driver where negligence can be shown."[59] "[N]otwithstanding the presumption of negligence, a favored motorist can still be assessed with comparative fault if his substandard conduct contributed to the cause of the accident. '[O]nce the presumption of negligence attaches to the defendant, the ordinary rules of comparative negligence apply and, thus, a plaintiff's damages may be reduced by the degree that he was comparatively at fault.'"[60]

Defendants acknowledge the initial applicability of the La. R.S. 32:81 presumption of liability.[61] Defendants argue summary judgment is warranted because there is no factual dispute that Mr. Glover created a sudden emergency when his vehicle stalled and/or slowed in the center lane of the highway.[62] Plaintiffs oppose summary judgment in part because there are two competing theories regarding the Glovers' vehicle issues.[63] Plaintiffs represent that the vehicle was slowly moving across lanes when Singh rear-ended the vehicle, whereas Trooper Wentzel and Nance opine that the car was stopped in the middle of I-10.[64] Defendants contend that whether "the vehicle was at complete

---

[58] *Id; see also, Domingo v. State Farm Mut. Auto. Ins. Co.,* 10–264 (La. App. 5 Cir. 11/9/10), 54 So.3d 74, at 80–81 ("The sudden emergency doctrine is an affirmative defense to the presumption of negligence. . . . The sudden emergency doctrine cannot be invoked by one who has not used due care to avoid the emergency.").

[59] *Matherne v. Lorraine,* 2003–2369 (La. App. 1 Cir. 9/17/04), 888 So.2d 244, 246.

[60] *Graffia v. Louisiana Farm Bureau Cas. Ins. Co.*, 2008-1480 (La. App. 1 Cir. 2/13/09), 6 So. 3d 270, 274 (quoting *Matherne,* 888 So.2d at 246).

[61] Rec. Doc. 41-2, p. 10.

[62] *Id* at p. 13.

[63] Rec. Doc. 42, p. 24.

[64] *Id*.

stop or just proceeding at a slow rate of speed is immaterial" because "in either event, the vehicle created a sudden emergency."[65] Whether the vehicle was completely stopped or moving slowly is immaterial for the purposes of summary judgment because in either situation, the Glovers' vehicle was stuck in the center lane of I-10 at the time of the accident. However, this does not render summary judgment appropriate because the summary judgment evidence presents genuine issues of material facts.

First, a factual dispute exists regarding whether there was construction, and traffic congestion, at or immediately prior to the site of the accident. The Crash Report does not contain any notes about construction.[66] Trooper Wentzel testified that construction would be "something [he] would generally note on [his] report" if it existed.[67] He also testified about a state police photo depicting the scene with no construction in sight.[68] In contrast, Mrs. Glover testified that there was construction near the scene of the accident, and she and Mr. Glover testified that, at the time of the accident, the Glovers were attempting to merge into ongoing traffic.[69] Mr. Glover testified that he attempted to merge into the right lane, but other drivers were not letting him in.[70] Thus, the evidence presents factual discrepancies concerning traffic congestion and whether this congestion was caused by nearby construction. Defendants contend that Singh "was unable to react in time to avoid a collision."[71] But, if there was construction nearby, which tends to slow down moving

---

[65] Rec. Doc. 43, p. 2.
[66] Rec. Doc. 41-4, p. 18, Dep. Transcript, p. 17:15–21.
[67] *Id*.
[68] *Id* at p. 18, Dep. Transcript, p. 17:15–24.
[69] Rec. Doc. 42-4, pp. 20–21 Dep. Transcript, pp. 20:4–21:11; Rec. Doc. 42-2, p. 13, Dep. Transcript, p. 43:1–21.
[70] Rec. Doc. 42-2, p. 12, Dep. Transcript, p. 40:22–24.
[71] Rec. Doc. 41-2, p. 3.

traffic, this raises the question of whether Singh should have known to slow down sooner, and thus raises uncertainty as to whether there was a sudden emergency.

Second, Singh's view of the Glovers' vehicle prior to the accident is in dispute. Plaintiffs oppose summary judgment because "despite nothing obstructing his view" Singh failed to stop.[72] In contrast, Defendants argue that "[t]here is no evidence supporting this claim," relying in part on the fact that Singh has not been deposed. The Court disagrees with Defendants. The summary judgment evidence presents a genuine issue of material fact with respect to Singh's perception leading up to the accident. In Singh's statement, he wrote that he "suddenly saw" the vehicle so he "could not be stopped."[73] This representation differs from Mr. Glover's testimony where he states that when he activated his emergency flashers, Mrs. Glover told him "a big truck was coming."[74] Mr. Glover testified that the truck "didn't seem like it was that close on [them]," but he activated his emergency flashers anyway.[75] Singh's statement suggests that the vehicle came as a surprise whereas Mr. Glover's testimony suggests that both parties had time to see each other. Defendants' expert, Nance, does not resolve the discrepancy. Nance was not at the scene of the accident nor did he speak to Singh when completing his Report.[76] Nance testified that he assumes nothing was obstructing Singh's view.[77] He also testified that he expects someone driving to see about 1000 to 1500 feet ahead of them, and opines that Singh should have been able to see the length of five football fields at a minimum on this particular roadway.[78] But, when asked whether Singh should have

---

[72] Rec. Doc. 42, p. 4.
[73] Rec. Doc. 41-6, p. 8
[74] Rec. Doc. 42-2, p. 13, Dep. Transcript, p. 44:15–18.
[75] Rec. Doc. 42-2, p. 13, Dep. Transcript, p. 44:19–22.
[76] Rec. Doc. 42-7, pp. 5 and 8, Dep. Transcript, p. 17:6–11 and p. 29:6–8.
[77] *Id* at p. 20, Dep. Transcript, p. 74:3–25.
[78] *Id* at pp. 21–22, Dep. Transcript, pp. 79:4–82:4.

seen the Glovers' vehicle, Nance testified that he did not know.[79] Moreover, he did not make any determinations as to how far someone could see ahead of them if they were sitting in an 18-wheeler truck, nor did he make any calculations as to how far Singh should have been able to see ahead of him.[80]

In summary, the parties provide conflicting representations on this issue, and Defendants' expert frankly raises more uncertainty. Accordingly, summary judgment will be denied. Relatedly, the Court will not predict how Singh's testimony would contribute to the outcome of this motion, and on this issue in particular, if he had been deposed. Nevertheless, the Court would be remiss if it did not acknowledge Plaintiffs' representation that Singh has repeatedly failed to appear for his deposition.[81] Aside from the Court finding genuine issues of material facts bar summary judgment dismissal, the Court disfavors considering Defendants' dispositive motion when Plaintiffs represent that they have made attempts to depose Singh, the primary defendant in this matter, but they have been stalled because Singh has failed to appear.[82] If this representation is accurate, it is certainly an impudent decision to seek dismissal while simultaneously preventing the opposing party a fair opportunity to make their case in opposition.

Finally, Defendants rely on Nance's expert opinion that Mr. Glover was the cause of the accident.[83] But, the Court has found that there are genuine disputes on material facts. Accordingly, the Court would need to make a credibility determination of Nance to find for Defendants on this issue. It is axiomatic that "[i]f a material fact cannot be resolved

---

[79] *Id* at pp. 26–27, Dep. Transcript, pp. 101:16–102:4.
[80] *Id* at pp. 22, Dep. Transcript, pp. 82:10–83:2.
[81] Rec. Doc. 42, p. 10.
[82] *Id.*
[83] Rec. Doc. 41-2, p. 13.

without making a credibility determination, summary judgment is improper."[84] Because, "[a]ssessment of the credibility and weight of expert testimony is the function of the jury."[85] Defendants correctly point out that the expert and discovery deadlines have passed, and Plaintiffs did not provide a rebuttal expert opinion.[86] Nevertheless, these circumstances do not result in the Court automatically finding Defendants' expert credible. Accordingly, Nance's opinion on fault does not override summary judgment denial.

## III.  CONCLUSION

For the aforementioned reasons, Defendants' Motion for Summary Judgment[87] is hereby **DENIED**.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana, on <u>August 29, 2024</u>.

**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[84] *Costly v. Nissan Motor Co., Ltd*, 2016 WL 4870246, at *3 (M.D. La. Sept. 13, 2016) (citing *Lascola v. Schindler Elevator Corp*., 2010 WL 971792 at *3 (E.D. La. Mar. 12, 2010)).
[85] *Id* (citing *Lascola*, 2010 WL 971792 at *3)).
[86] Rec. Doc. 41-2, pp. 7, 14; Rec. Doc. 6.
[87] Rec. Doc. 41.